UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VANESSA CAMPER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and ALLSTATE INSURANCE COMPANY,<br><br>　　　　　　Defendants. | CASE NO. C18-5486 BHS<br><br>ORDER DENYING STATE FARM'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING ALLSTATE'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant State Farm Fire and Casualty Company's ("State Farm") motion for partial summary judgment re: coverage, Dkt. 17, and Defendant Allstate Insurance Company's ("Allstate") motion for summary judgment re: coverage, Dkt. 21. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies State Farm's motion and grants Allstate's motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 16, 2018, Plaintiff Vanessa Camper ("Camper") filed a complaint in Pierce County Superior Court for the State of Washington against State Farm and

Allstate. Dkt. 1-2. Camper alleges that the insurance companies are liable for all damages associated with the flooding of her house on May 17, 2017. *Id.*

On June 14, 2018, Allstate removed the matter to this Court. Dkt. 1.

On June 19, 2019, State Farm and Allstate filed the instant motions for summary judgment. Dkts. 17, 21. On July 8, 2019, Camper responded. Dkts. 23, 27. On July 12, 2019, State Farm and Allstate replied. Dkts. 28, 30.

## II.  FACTUAL BACKGROUND

On the morning of May 17, 2017, Camper walked down the stairs of her home to the lower level and "walked right into water." Dkt. 18-1 at 4. She could not find where the water was coming from, so she sought help from her neighbor. Dkt. 25, Declaration of Vanessa Camper ("Camper Decl."), ¶¶ 5–6. They discovered that water was flowing down her driveway and into her garage. *Id.* ¶ 7. At some point, Camper discovered that the water was emanating from a broken pipe between the main water connection and her house. Camper contacted Allstate and Washington Restorer, a home restoration company. *Id.* ¶ 8. Washington Restorer sent its employee Maggie King ("King") to Camper's house to appraise the damage and develop a remediation plan. Dkt. 26, ¶ 2.

When King arrived at the house, the water had been turned off, but the source of the leak had not been identified. *Id.* ¶ 6. King asserts that the water heater was damaged and the electrical wiring in the house had been compromised by the flooding. *Id.* King opines that the house was uninhabitable because (1) there was no water, (2) the electrical system was compromised, (3) asbestos insulation had been damaged and needed to be removed, and (4) mold had started to form. *Id.* ¶ 7.

Camper submitted the remediation plan and construction bids to Allstate, but Allstate denied coverage. Several weeks after the incident, Camper discovered that she also had a homeowner's policy with State Farm. Camper Decl., ¶ 13. Camper submitted a claim, and State Farm assigned adjustor Fred Long ("Long") to the claim. *Id.* Initially, State Farm denied coverage, but it eventually provided some coverage for the damage. *Id.* ¶ 15. Although King told Camper that the home was uninhabitable, State Farm refused to compensate Camper for substitute housing. *Id.* ¶ 16. Camper claims that Long would not authorize remedial work until Camper paid to fix the broken pipe. *Id.* In September, Camper obtained funds to pay for the pipe repair. She then hired DrainTech Northwest to excavate and repair the water line. *Id.*, Exh. A.

On the date of the loss, Camper had a homeowner's insurance policy with State Farm. Dkt. 18-3. The relevant parts of the policy for the purposes of this motion are (1) the losses not insured provision and (2) the mitigation of losses provision. In the first provision, the policy states that State Farm will not cover loss to property that is caused by "wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown" or "mold, fungus or wet or dry rot." Dkt. 19-1 at 8. The provision also states that State Farm does "not insure under any coverage for any loss consisting of the items" listed above. *Id.*

Regarding the mitigation of losses provision, the policy states an insured's duties after a loss. Included in those duties is the duty to give immediate notice to State Farm and the duty to protect the property from further damage or loss. *Id.* at 9.

On the date of the loss, Camper had a homeowner's policy with Allstate. Relevant to the instant motion, the policy covered losses resulting from a sudden and accidental escape of water or steam from a plumbing system within the dwelling. Dkt. 22-2 at 24–25. The policy, however, excluded losses resulting from "[w]ater or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises." *Id.* at 23.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Insurance Contracts**

"A determination of coverage involves two steps: first, '[t]he insured must show the loss falls within the scope of the policy's insured losses.'" *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 271–72 (2011) (quoting *McDonald v. State Farm Fire & Cas. Co.,* 119 Wn.2d 724, 731 (1992)). "Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" *Id.* at 272 (quoting *McDonald*, 119 Wn.2d at 731).

C.      **State Farm's Motion**

State Farm moves for judgment as a matter of law on four issues as follows: (1) the cost of repairing the underground water pipe that caused the flood; (2) restoration expenses related to mold; (3) expenses related to temporary housing; and (4) any increase mitigation or repair costs resulting from Camper's alleged failure to timely mitigate the loss.

   1.      **Underground Pipe**

State Farm argues in a four-sentence conclusory fashion that the policy excludes coverage for damages to the waterline itself based on the exclusion for latent defects or defects in the material used in construction. Dkt. 17 at 11. In a similar conclusory fashion, Camper argues that State Farm "has submitted no evidence to identify what caused the water pipe to break and discharge water" and that "[i]t makes no sense that the policy would provide coverage for damage caused by the 'sudden and accidental discharge of water from a plumbing system' yet have an exception for the cost of fixing the plumbing to prevent further discharge." Dkt. 23 at 9 (citing a coverage provision in the policy). State Farm replies that Camper "has identified no cause of the pipe failure which could be covered." Dkt. 30 at 4. To recap, State Farm moved for judgment based on the application of an exclusion and then shifted its position by arguing for the first time in reply that Camper has failed to meet her burden to establish coverage. The Court strikes the latter argument regarding coverage because it is presented for the first time in a reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Regarding the

application of the exclusion, State Farm fails to establish that no material facts exist or that no reasonable juror could find other than for State Farm. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("*where the moving party has the burden*—the plaintiff on a claim for relief or the defendant on an affirmative defense— *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*."). Therefore, the Court denies State Farm's motion on this issue.

### 2. Mold and Additional Living Expenses

State Farm moves for judgment on Camper's claims for the repair costs of mold and for additional living expenses. Dkt. 17 at 11–13. However, both of these arguments are based on the conclusion that the broken water pipe is an excluded peril. *See, e.g.*, Dkt. 17 at 13 ("the mold was also caused by the failed water line."). State Farm has failed to establish that the broken water line is subject to an exclusion and therefore the Court denies the motion as to the mold and the additional living expenses as well.

### 3. Failure to Mitigate

State Farm again argues in conclusory fashion that it is not responsible for the "increased costs of mitigation and repair" because Camper failed to timely notify State Farm of the loss. Dkt. 17 at 13–14. Even if the Court agreed with State Farm that Camper failed to timely notify it of the loss, the Court declines to grant such a general request to preclude "increased costs of mitigation and repair." State Farm fails to articulate what it considers acceptable costs as opposed to "increased costs" and essentially asks the Court to sua sponte determine which costs are which. At the very

least, State Farm has failed to show that it is entitled to judgment on this issue or that no material questions of fact exist. Therefore, the Court denies State Farm's motion.

**D.    Allstate's Motion**

Allstate argues that the policy provides no coverage for damages resulting from exterior water entering Camper's home. Dkt. 21 at 6–7. Allstate's policy excludes coverage for "[w]ater or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises." Dkt. 22-2 at 23. Although that language is clear, Camper argues that the policy is ambiguous because it provides coverage for a "sudden and accidental escape of water or steam from a plumbing system within your dwelling" and "dwelling" is defined as "building structure with a roof and walls, where you reside, and which is principally used as a private residence." Dkt. 27 at 4–5. Camper argues that "the plumbing system, including its intake pipes are an essential part of the dwelling structure" because "[y]ou cannot have a house without water pipes bringing water into the house." *Id.* at 5. Camper has failed to establish any ambiguity in the policy language. To establish an ambiguity, Camper must show that some language "is fairly susceptible to two different but reasonable interpretations." *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515 (1997) (quoting *Transcontinental Ins. Co. v. Washington Public Utilities Districts' Utility System*, 111 Wn.2d 452, 456–57 (1988)). In short, Camper's proposed interpretation of dwelling is not reasonable. While the great majority of modern homes have indoor plumbing, Camper has failed to establish that "dwelling" necessarily includes the means

for providing the structure with modern utilities. Therefore, the Court grants Allstate's motion because the policy is unambiguous and excludes coverage for damages caused by water that leaks through the exterior of the residence.

## IV. ORDER

Therefore, it is hereby **ORDERED** that State Farm's motion for partial summary judgment re: coverage, Dkt. 17, is **DENIED** and Allstate's motion for summary judgment re: coverage, Dkt. 21, is **GRANTED**.

Dated this 9th day of September, 2019.

BENJAMIN H. SETTLE
United States District Judge