# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| VANESSA CAMPER,<br><br>               Plaintiff,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY and ALLSTATE INSURANCE COMPANY,<br><br>               Defendants. | CASE NO. C18-5486 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Defendant State Farm Fire and Casualty Company ("State Farm") motion for partial summary judgment re damages. Dkt. 35. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 16, 2018, Plaintiff Vanessa Camper ("Camper") filed a complaint in Pierce County Superior Court for the State of Washington against State Farm and Allstate

Insurance Company ("Allstate"). Dkt. 1-2. Camper alleges that the insurance companies are liable for all damages associated with the flooding of her house on May 17, 2017. *Id.*

On June 14, 2018, Allstate removed the matter to this Court. Dkt. 1.

On June 19, 2019, State Farm and Allstate filed motions for summary judgment on coverage. Dkts. 17, 21. On August 7, 2019, State Farm filed the instant motion for partial summary judgment on damages. Dkt. 35. On August 26, 2019, Camper responded. Dkt. 38. On August 30, 2019, State Farm replied. Dkt. 41.

On September 9, 2019, the Court granted Allstate's motion on coverage and denied State Farm's motion on coverage. Dkt. 43.

## II. FACTUAL BACKGROUND

On the morning of May 17, 2017, Camper walked down the stairs of her home to the lower level and "walked right into water." Dkt. 18-1 at 4. She could not find where the water was coming from, so she sought help from her neighbor. Dkt. 25, Declaration of Vanessa Camper ("Camper Decl."), ¶¶ 5–6. They discovered that water was flowing down her driveway and into her garage. *Id.* ¶ 7. At some point, Camper discovered that the water was emanating from a broken pipe between the main water connection and her house. Camper contacted Allstate and Washington Restorer, a home restoration company. *Id.* ¶ 8. Washington Restorer sent its employee Maggie King ("King") to Camper's house to appraise the damage and develop a remediation plan. Dkt. 26, ¶ 2.

When King arrived at the house, the water had been turned off, but the source of the leak had not been identified. *Id.* ¶ 6. King asserts that the water heater was damaged and the electrical wiring in the house had been compromised by the flooding. *Id.* King

opines that the house was uninhabitable because (1) there was no water, (2) the electrical system was compromised, (3) asbestos insulation had been damaged and needed to be removed, and (4) mold had started to form. *Id.* ¶ 7.

Camper submitted the remediation plan and construction bids to Allstate, but Allstate denied coverage. Several weeks after the incident, Camper discovered that she also had a homeowner's policy with State Farm. Camper Decl., ¶ 13. Camper submitted a claim, and State Farm assigned adjustor Fred Long ("Long") to the claim. *Id.* Initially, State Farm denied coverage, but it eventually provided some coverage for the damage. *Id.* ¶ 15. Although King told Camper that the home was uninhabitable, State Farm refused to compensate Camper for substitute housing. *Id.* ¶ 16. Camper claims that Long would not authorize remedial work until Camper paid to fix the broken pipe. *Id.* In September, Camper obtained funds to pay for the pipe repair. She then hired DrainTech Northwest to excavate and repair the water line. *Id.*, Exh. A.

As a result of King's conclusion that the house was uninhabitable, Camper and her daughter moved in with Camper's mother. Dkt. 25, ¶ 13. Camper asserts that she was unable to pay the mortgage on her uninhabitable house and rent for a separate apartment. *Id.*

On the date of the loss, Camper had a homeowner's insurance policy with State Farm. Dkt. 18-3. The relevant part of the policy for this motion provides that State Farm will cover necessary costs Camper incurs when her premises becomes uninhabitable. Dkt. 18-3 at 17.

## III. DISCUSSION

State Farm moves for summary judgment seeking dismissal of Camper's requests for (1) emotional distress damages; (2) damages allegedly sustained by non-party Vanneshia Camper; (3) exemplary damages or attorney's fees under Washington's Insurance Fair Conduct Act ("IFCA"); (4) housing costs; (5) injunctive relief; and (6) diminished fair market value to Camper's house. Dkt. 35 at 1. Camper concedes that she is not requesting injunctive relief, Dkt. 38 at 11–12, and failed to respond to the diminished fair market value issue. The Court grants State Farm's motion on injunctive relief based on Camper's concession and on the diminished value issue because Camper has failed to establish a material question of fact on this issue. The Court addresses the remainder of the issues below.

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Emotional Distress**

State Farm argues that Camper may not seek emotional distress damages for a breach of contract claim.  Dkt. 35 at 4.  Camper contends that she is entitled to these damages based on State Farm's bad faith.  Dkt. 38 at 5–6.  State Farm argues that Camper did not plead a bad faith tort claim and the first time Camper mentioned "bad faith" in this matter was in her response brief.  Dkt. 41 at 3.  The Court agrees with State Farm.

Camper's complaint is extremely terse and does not mention bad faith or any tort action. At best, it requests all damages available caused by the flooding of her house. Dkt. 1-2, ¶¶ 4.1, 4.3. That request, however, is based only on State Farm's "liab[ility] to Plaintiff under [its] insurance policy . . . ." *Id.* ¶ 4.1. Therefore, the Court concludes that a claim for bad faith is outside the scope of the operative complaint.

Limiting the complaint to a claim for breach of contract results in a conclusion that Camper may not seek emotional distress damages. "Emotional distress damages are not recoverable in a breach of contract action." *Trinidad v. Metro. Prop. & Cas. Ins. Co.*, C13-5191 BHS, 2013 WL 6729639, at *4 (W.D. Wash. Dec. 19, 2013) (citing *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426 (1991)). Therefore, the Court grants State Farm's motion on Camper's request for emotional distress damages.

**C.    Vanneshia Camper**

State Farm argues that Camper may not seek damages on behalf of her adult daughter Vanneshia Camper. Dkt. 35 at 4. Camper argues that Vanneshia is a third-party beneficiary of Camper's contract and that "[h]er action is derivative of her mother's claim." Dkt. 38 at 7. The problem with this argument is that Vanneshia is not a party to this action and Camper fails to provide any authority for the proposition that she may, in her individual capacity, assert a claim on behalf of her adult daughter. Therefore, the Court grants State Farm's motion on Camper's request for damages on behalf of her daughter, Vanneshia.

**D.      IFCA**

Similar to Camper's failure to assert a bad faith claim, Camper not only failed to assert an IFCA claim but also failed to provide notice of her IFCA claim. RCW 48.30.015(8) ("Twenty days prior to filing an action based on [violations of IFCA], a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner."). Camper does not contest these failures, but she does present tolling and waiver arguments based in equity and asserts that if the Court dismisses the IFCA claim, Camper could simply refile it. Dkt. 38 at 9. First, Camper provides no authority for either tolling or waiver of the IFCA notice requirement. Thus, the Court rejects these arguments.

Second, there is no IFCA claim to dismiss. Instead, the Court concludes that Camper did not assert an IFCA claim in her complaint. Moreover, it is highly unlikely that Camper could meet the high burden for leave to amend the complaint at this point because the current record reflects a lack of diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992) ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. . . . If party was not diligent, the inquiry should end."). Therefore, the Court grants State Farm's motion on Camper's request for IFCA damages under her sole breach of contract claim by failing to compensate her for the costs she incurred.

**E.      Housing Costs**

State Farm argues that Camper may not recover for substitute housing costs because she did not actually incur any costs. Dkt. 35 at 6–7. Camper concedes that she

has been living with her mother but argues that State Farm should have provided substitute housing while her home was allegedly uninhabitable. Dkt. 38 at 10–11. Contrary to Camper's position, the contract of insurance only provides that State Farm will reimburse Camper for costs actually incurred. Dkt. 18-3 at 17. There is no provision in the contract that requires State Farm to pay for the housing in advance. Therefore, the Court grants State Farm's motion on this issue because Camper has failed to establish that State Farm breached this provision of the contract.

### IV. ORDER

Therefore, it is hereby **ORDERED** that State Farm's motion for partial summary judgment re damages, Dkt. 35, is **GRANTED**.

Dated this 7th day of November, 2019.

BENJAMIN H. SETTLE
United States District Judge